UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:21-CV-010 |
| ) | |
| WILLIAM BYRON LEE and ) | |
| DAVID B. RAUSCH, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This matter is before the Court on Defendants' motion to dismiss [Doc. 13]. Plaintiff has responded [Doc. 18], and Defendants have replied [Doc. 19]. For the reasons stated below, Defendants' motion to dismiss [Doc. 13] will be **GRANTED in part** and **DENIED in part**.

**I.    Background**

This case is one of several filed in the last few years regarding the State of Tennessee's sex offender registry's obligations and requirements for individuals convicted of certain criminal offenses before the current registry requirements or obligations existed. Several opinions from U.S. District Courts in this state have found the application of the registry to be unlawful, or likely unlawful, depending the posture of the case, for several plaintiffs on the ground that the State of Tennessee is constitutionally forbidden from increasing the punishment associated with a crime *ex post facto*. *See, e.g.*, *Doe #1 v. Lee*, No. 3:16-CV-02862, 2021 WL 428967, at *41 (M.D. Tenn. Feb. 8, 2021) (Richardson,

J.); *Jackson v. Rausch*, No. 3:19-CV-377, 2020 WL 7496528, at *4 (E.D. Tenn. Dec. 21, 2020) (Jordan, J.); *Reid v. Lee*, 476 F.Supp.3d 684, 708 (M.D. Tenn. 2020) (Trauger, J.); *Doe v. Rausch (Doe 504)*, 461 F. Supp. 3d 747, 769 (E.D. Tenn. 2020) (Reeves, C.J.); *Doe v. Rausch (Doe 217)*, 382 F. Supp. 3d 783, 799–800 (E.D. Tenn. 2019) (Phillips, J.). Given the fact that these issues have been repeatedly and expertly litigated, the court will not belabor the details here, but will provide a simple recitation of the issues involved and the details particular to this case.

### A. The Parties

According to the Complaint, Plaintiff John Doe ("Plaintiff") is a Tennessee resident who challenges the constitutionality of the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004, as amended, Tenn. Code Ann. §§ 40-39-201—218 (hereinafter "the Act"). [Doc. 1, ¶ 1]. Director David Rausch ("Defendant Rausch") is the Director of the Tennessee Bureau of Investigation ("TBI") and Governor William Byron Lee ("Defendant Lee") is the Governor of Tennessee (collectively "Defendants") and are being sued in their official capacities. [*Id*. at ¶¶ 23-28]. Pursuant to the Act, the TBI is required to: enforce the Act, maintain Tennessee's database of sex offenders, maintain an Internet-accessible public sex offender registry, register offenders (along with other law enforcement agencies), develop registration forms, provide statutorily-required notices to registrants, collect registration fees, and coordinate with national law enforcement and the national sex offender registry. [*Id*. at ¶ 27]. Pursuant to Article III, § 1 of the Tennessee Constitution, the Governor has supreme executive power of the state, is ultimately responsible for the enforcement of the laws of the state and for

2

supervision of all state departments, and is charged with taking care that all applicable federal and state laws are faithfully executed. [*Id*. at ¶ 24].

### B. History of Plaintiff

In 1999, Plaintiff pled guilty to two counts of rape for conduct that occurred when he was eighteen years old and was sentenced to 10 years in prison. [*Id*. at ¶¶ 16-17]. Plaintiff completed his sentence July 2007, and has not been subject to any supervision other than the sex offender registry laws since. [*Id*. at ¶ 17]. Since his release, Plaintiff has earned a college degree from the University of Tennessee, held consistent employment in logistics since graduating, and has led a productive life. [*Id*. at ¶ 18]. When Plaintiff pled guilty in 1999, he was subject to the Sexual Offender Registration and Monitoring Act, 1994 Tenn. Pub. Laws, ch. 976, as amended, (the "1994 Act"). The 1994 Act required Plaintiff to register as a "sex offender" but did not otherwise restrict his liberty, the registry was private because it was only available to law enforcement, and Plaintiff was allowed to seek removal from the registry 10 years after completing his sentence. [*Id*. at ¶ 19].

Under the Act, Plaintiff must report four times a year to an office of the Knoxville Police Department ("KPD") and pay an annual $150.00 fee. [*Id*. at ¶ 20]. Plaintiff claims that he has remained publicly labeled a "sexual offender" and has become subject to numerous, onerous, and vague restrictions on where he can live, work, or go and those restrictions have only increased with each amendment to the Act. [*Id*. at ¶ 19]. Plaintiff claims that the increasingly onerous and punitive registration law has vague and arbitrary provisions and crushing criminal penalties which enable and encourage law enforcement
3
Case 3:21-cv-00010-RLJ-DCP   Document 25   Filed 02/14/22   Page 3 of 16   PageID #: 163

to treat Plaintiff like a pariah and disrupt his and his family member's lives at any moment, without warning or reason. [*Id*. at ¶ 21].

### C. History of the Act

Tennessee enacted its first sex offender registration law in 1994. [*Id*. at ¶ 29]. In 2004, the 1994 Act was repealed and replaced by the Act which dramatically expanded the scope and burden of the 1994 Act. [*Id*. at ¶ 37]. Since 2004, the Act has undergone numerous changes and amendments almost every year. [*Id*. at ¶ 38]. Specifically, in 2014, the Act was amended to require individuals classified as an "offender against children" – a designation based solely on whether the alleged victim was 12 years or younger – register for life. [*Id*.]. Fifteen years after Plaintiff's plea and conviction, he became classified as an "offender against children" subject to lifetime registration without any individualized determination about his risk or whether lifetime registration is warranted. [*Id*. at ¶ 47].

Plaintiff contends there is no mechanism under the Act to allow him to have his registration obligations eliminated or reduced. [*Id*. at ¶ 46]. Further the Act in its current form subjects registrants to obligations, restraints, disabilities, and punishment of a different character and a greater order of magnitude than those imposed by the 1994 Act or even the Act in its original 2004 form. [*Id*. at ¶ 48].

Plaintiff complains about the reporting, surveillance, and supervision requirements of the Act [*Id*. at ¶¶ 52-60]; the impact of the Act's requirements on his family relationships and parenting [*Id*. at ¶¶ 61-65]; the limits on his access to housing [*Id*. at ¶¶ 66-70]; the limits on his employment and educational opportunities [*Id*. at ¶ 71-72]; the restrictions on his travel [*Id*. at ¶¶ 73-79], the restrictions on his Internet usage and public speech [*Id*. at

4

¶¶ 80-84]; and his public stigmatization [*Id*. at ¶¶ 85-87]. Plaintiff also complains that the restrictions and obligations of the Act are so vague he is unable to know whether or not he is in violation of the law and so extensive and pervasive that he is "literally unable to comply with the law" [*Id*. at ¶ 88-98]. Plaintiff argues that the requirements of the Act bear no rational relationship to the risk that individual registrants pose to the community [*Id*. at ¶¶ 101-107]. Plaintiff further argues that the "Exclusion Zones" defined by the Act can change at a moment's notice, are impossible for ordinary people to identify the areas that are inside and outside of the Exclusion Zones because Tennessee does not provide maps to the public or registrants of the Exclusion Zones or their boundaries, subject him to arrest at the whim of any officer as Plaintiff's mere presence in an exclusion zone constitutes probable cause, and severely restrict access to employment and housing and limit registrants' ability to engage in normal human activity. [*Id*. at ¶¶ 108-115].[1] Plaintiff also argues that the Act has fundamentally and retroactively altered the consequences of Plaintiff's plea and conviction. [*Id*. at ¶¶ 116-119].

Plaintiff alleges that the Act: violates the Ex Post Facto Clause of the United States Constitution [*Id*. at ¶ 120]; violates his Due Process rights to travel and work [*Id*. at ¶¶ 121-129]; violates his Due Process rights to direct the education and upbringing of children [*Id*. at ¶¶ 130-133]; violates his First Amendment right to free speech [*Id*. at ¶¶ 134-137];

---

[1] The "Exclusion Zones" to which Plaintiff refers are contained in Tenn. Code Ann. § 40-39-211. This provision of the Act imposes a variety of geographic restrictions on where registrants may work, reside, or be present, e.g., "within one thousand feet (1,000') of the property line of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public. Tenn. Code Ann. § 40-39-211(a)(1).

violates Due Process by imposing retroactive restrictions on him [*Id*. at ¶¶ 138-140]; violates Due Process by imposing criminal liability without any proof of actual knowledge of the duty to comply with the law and due to vagueness and impossibility [*Id*. at ¶¶ 141-148]. Plaintiff seeks declaratory and injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201-2202. [*Id*. at ¶¶ 12-13].

**II.     Analysis**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering a Rule 12(b)(6) motion, a court must treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party. *DIRECTTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences, and [c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (internal citations and quotation marks omitted). Dismissal under Rule 12(b)(6) "is proper when there is no set of facts that would allow the plaintiff to recover." *Carter by Carter v. Cornwell*, 983 F.2d 52, 54 (6th Cir. 1993); *see also Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) ("To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.").

### A. Motion to Dismiss Complaint [Doc. 13]

#### 1. Count 1 – Ex Post Facto Violation

Defendants argue that Plaintiff fails to state a claim for a violation of the Ex Post Facto Clause as the Act does not have an unconstitutional punitive effect as applied to Plaintiff. [Doc. 14, pp 3-8]. Defendants argue that the intent of the legislature was to establish a civil proceeding, thus the registration requirements are not punitive in nature; other courts, including the Sixth Circuit, have held that the sex offender registration and reporting requirements under similar statutes do not violate the Ex Post Facto Clause; and the effects of the Act on Plaintiff are not cumulatively punitive as applied to Plaintiff. [*Id.*]. Plaintiff responds that the Sixth Circuit's holding in *Does v. Snyder*, 834 F.3d 696 (6th Cir. 2016) indicates that the individual provisions of a sex offender registry law can cumulatively be punitive and violate the Ex Post Facto and Due Process Clauses of the Constitution. [Doc. 18, pp. 3-5].

The Supreme Court has established the framework for considering such challenges by adopting what has been described as an "intent – effects" test: (1) did the legislature intend to impose punishment; and (2) if not, is the statutory scheme "so punitive in either purpose or effect as to negate [the State's] intention to deem it civil." *Smith v. Doe*, 538 U.S. 84, 92 (2003); *Snyder*, 834 F.3d at 700. The *Smith* Court noted, "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." 538 U.S. at 92 (internal quotations omitted). Plaintiff has not alleged that the Act was intended to impose punishment, so the test is whether the Act has a punitive effect.

In analyzing the effects of the Act, the Supreme Court has instructed the Court to consider five, non-exhaustive factors: (1) Does the law inflict what has been regarded in our history and traditions as punishment? (2) Does it impose an affirmative disability or restraint? (3) Does it promote the traditional aims of punishment? (4) Does it have a rational connection to a non-punitive purpose? (5) Is it excessive with respect to this purpose? *Snyder*, 834 F.3d at 701 (citing *Smith*, 538 U.S. at 97).

Accepting the allegations of the Complaint as true, the Court concludes that Plaintiff has alleged a plausible claim that the Act as applied to Plaintiff is so punitive in effect as to violate the Ex Post Facto Clause. *See Doe v. Miami-Dade Cty.*, 846 F.3d 1180, 1185—86 (11th Cir. 2017). Here, like in *Snyder*, the Act's restrictions likely meet the general, and widely accepted, definition of punishment and specifically resemble the punishment of banishment. *Id*. at 701-02. Further, like the Michigan statute in *Snyder*, the Act plausibly places significant restraints on how registrants can live their lives due to the restrictions on where registrants may live, work, and travel. *See id*. at 703. The Act plausibly advances all of the traditional aims of punishment: incapacitation, retribution, and deterrence, and does so in ways that only tenuously relate to legitimate, non-punitive purposes. *See id*.; *see also Doe 217*, 382 F. Supp. 3d at 802; *Doe 504*, 461 F. Supp. 3d at 771–73. Finally, Plaintiff has sufficiently alleged that the cumulative negative effects of the Act on Plaintiff outweigh the positive effects of the Act. *See Snyder*, 834 F.3d at 704. Accordingly, Defendants' motion to dismiss Count 1 will be **DENIED**.

### 2. Counts 2, 3, & 6 – Rights to Travel and Work and Retroactivity

Defendants move to dismiss Counts II, III, and VI. [Doc. 14]. Plaintiff responds that he does not contest dismissal of these three claims based on recent rulings in federal courts and in hopes of expediting the resolution in this case. [Doc. 18, pp. 2-3]. In light of the parties' agreement, Defendants' motion to dismiss Counts II, III, and VI will be **GRANTED** and those counts will be **DISMISSED**.

### 3. Count 4 – Right to Raise Children

Defendants argue that Count 4, which alleges that the Act's exclusion zones restrictions violate Plaintiff's fundamental right to direct the upbringing of his child [Doc. 1, ¶¶ 130-33], should be dismissed because the Act does not infringe on Plaintiff's rights as he can still choose where his child goes to school, he can attend conferences and transport his child to and from school with advance notice, Plaintiff's rights do not extend to claims related to extracurricular activities and accompanying children to public parks, and Plaintiff's allegation that he cannot move in with his girlfriend is irrelevant since the rights only apply to Plaintiff's own children. [Doc. 14, pp. 11-13].

The Fourteenth Amendment prohibits states from interfering with parents' fundamental right to direct the upbringing and education of their children. *United States v. Widmer*, 785 F.3d 200, 207 (6th Cir. 2015) (citing *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996)). Parents' right to direct the upbringing and education of their children includes "the right to 'the companionship, care, custody and management of [their] children.'" *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27 (1981) (citation omitted). Courts apply strict scrutiny to government actions that burden this right and therefore will uphold them only

9

if they are narrowly tailored to serve a compelling government interest. *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 419 (6th Cir. 2019) (citation omitted).

The viability of this claim is likely to hinge, in significant part, on factual questions regarding how severely the Act's requirements interfere in Plaintiff's life and how much of that interference can be attributed to his registry status. The Court is unable to make these determinations without a full factual record. However, the Court finds that Plaintiff has, at the very least, stated a plausible claim for relief as to whether the Act violates his due process right to direct the upbringing and education of his child. The complaint contains numerous allegations regarding how the exclusion zones restrictions affect Plaintiff personally and how they are imposed without an individualized assessment of the particular risks that Plaintiff presents.

Accordingly, Defendants' motion to dismiss Count 4 will be **DENIED**.

### 4. Count 5 – First Amendment

Defendants argue that Plaintiff's allegations that the Act's requirements violate the First Amendment do not state a claim upon which relief can be granted as he has failed to "raise a plausible claim that a substantial number of instances exist in which the Internet reporting requirements would be applied unconstitutionally." [Doc. 14, pp. 13-17].

Plaintiff argues that the Act's requirements for providing law enforcement with a complete listing of his e-mail addresses, usernames, social media accounts, instant messaging names, and screen names is ambiguous and forces Plaintiff to either overreport or underuse the Internet; substantially interferes with Plaintiff's access to the internet as a forum for speech and unconstitutionally chills Plaintiff's ability to engage in anonymous

10

internet speech; and is vague as to how quickly Plaintiff must report internet-related information. [Doc. 18, pp. 9-14]. Further, Plaintiff notes that similar facial and as-applied First Amendment challenges to the Act have not been dismissed at this stage to allow for the development of a full factual record and requests the Court to find the same. [*Id*. at p. 16].

Defendants are correct that the reporting requirements of the Act are content-neutral as they do not restrict certain viewpoints or modes of expression and, thus, are subject to intermediate scrutiny. *See Turner Broadcasting Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994) ("regulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny"); *Planet Aid v. City of St. Johns, MI*, 782 F.3d 318, 326 (6th Cir. 2015). To withstand intermediate scrutiny, laws must be "narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels for communication of the information." *Crookston v. Johnson*, 841 F.3d 396, 403 (6th Cir. 2016) (internal citations omitted).

Without a full factual record, the Court is simply unable to conclude that the Act is sufficiently narrowly tailored to serve a significant governmental interest. Faced with only the allegations of the Complaint and the Act's language, the Court is unable to determine the real-world effect of the Act on internet use or the burden the Act's restrictions place on Plaintiff's internet speech, let alone whether the requirements serve a significant government interest. *See Doe v. Haslam*, Nos. 3:16-CV-2862, 3:17-CV-264, 2017 WL 5187117, at *18 (M.D. Tenn. Nov. 9, 2017); *see also Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) ("[g]overnment may not regulate expression in such a manner that a

11

substantial portion of the burden on speech does not serve to advance its goals"). Accordingly, Defendants' motion to dismiss Count 5 will be **DENIED**.

### 5. Counts 7 & 8 – Criminal Liability without Knowledge and Void for Vagueness and Impossibility

Defendants argue that Plaintiff's allegations that the Act's exclusion zones restrictions violate Plaintiff's due process rights because the Act criminalizes passive behavior, fail to state a claim because there is a scienter requirement, "knowingly," and the Act does not punish passive behavior. Defendants also argue that the Act's requirements are not so vague that they do not alert a person of ordinary intelligence to the consequences of his actions and that it is not impossible for Plaintiff or other registrants to comply with the provisions of the Act. [Doc. 14, pp. 18-22].

A statute is "void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Specifically, a statute is unconstitutionally vague if a person of ordinary intelligence cannot understand what action the statute prohibits. *Id.* Vagueness challenges are as applied and therefore focus on whether the statute is vague in light of the plaintiff's particular circumstances. *United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012). Additionally, "[h]olding an individual criminally liable for failing to comply with a duty imposed by statute, with which it is legally impossible to comply, deprives that person of his due process rights." *Doe v. Snyder* (*Snyder II*), 101 F. Supp. 3d 722, 724 (E.D Tenn. 2015) (citations omitted). And a statute that punishes a person for "passive conduct that does not 'alert the doer to the consequences of his deed'"

equally violates due process. *Doe v. Rausch* (*Rausch II*), 461 F. Supp. 3d 747, 775 (E.D. Tenn. 2020) (quoting *Lambert v. California*, 355 U.S. 225, 228 (1957)).

Here, Plaintiff has plausibly alleged facts that, taken together, show that the Act may criminalize passive behavior without actual knowledge and that the Act may be unconstitutionally vague and contains prohibitions with which it is impossible to comply. Specifically, Plaintiff has alleged that the property boundaries of the exclusion zones are unknown and are impossible to measure without sophisticated equipment, that he is subject to arbitrary arrest as his presence in an exclusion zone constitutes probable cause, and that Tennessee does not provide maps of the exclusion zones boundaries or locations to registrants which makes compliance impossible. [Doc. 1]. These claims, like Plaintiff's First Amendment claims discussed above, are largely fact-dependent. Thus, the factual record must be more developed before the Court can rule on these due process claims. *See Haslam*, 2017 WL 5187117, at *18-19; *see also Doe v. Haslam*, No. 3:17-cv-217, 2017 WL 4782853 (E.D. Tenn. Oct. 23, 2017) (Phillips, J.); *Doe v. Gwyn*, No. 3:17-CV-504, 2018 WL 1957788, at *11 (E.D. Tenn. Apr. 25, 2018); *Jackson*, 2020 WL 7496528, at *7.

Accordingly, Defendants' motion to dismiss Counts 7-8 will be **DENIED**.

### B. *Motion to Dismiss Defendant Lee [Doc. 13]*

Defendants argue that sovereign immunity prohibits suit against the Defendant Lee because the Governor has only general enforcement authority regarding the Act, and therefore move to dismiss him from this action [Doc. 14 pp. 22–23]. Plaintiff responds that, other than the Governor, "there is no single body or administrator who bears full responsibility" for the Act's enforcement, and highlights that the TBI, local prosecutors,

13

and police are all separately responsible for enforcing different provisions of the Act. [Doc. 18, pp. 20–21].

Generally, a state's sovereign immunity extends to state officials who may not be sued in their official capacity unless the state has waived or abrogated sovereign immunity. *Doe v. Dewine*, 910 F.3d 842, 848 (6th Cir. 2018). Further, state officials may not be sued based on their general authority to enforce the laws at issue. Rather, officials must possess "some connection with the enforcement" of the laws. *Id.* (finding that an attorney general and a superintendent were appropriate defendants) (quoting *Ex Parte Young*, 209 U.S. 123, 157 (1908)). Namely, officials must have "direct responsibility in the area in which the plaintiff seeks relief." *Doe v. Lee* (*Lee II*), No. 3:21-CV-28, 2021 WL 1907813, at *7 (M.D. Tenn. May 12, 2021) (citation omitted); *see also Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982) (not involving a governor). However, in an oft-cited footnote in *Allied Artists*, the Sixth Circuit noted that a governor is a proper defendant in a case where the plaintiff challenges a statute, there is a "substantial public interest" in enforcing the statute, and there is a "significant obligation upon the Governor to use his general authority to see that the [statute is] enforced." *Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656, 665 n.5 (6th Cir. 1982); *see also Lee II*, 2021 WL 1907813, at *7–8; *Haslam*, 2017 WL 5187117, at *9.

Recently, in similar cases, the Middle District of Tennessee has held that, under *Allied Artists*, the Governor of Tennessee is a proper defendant in claims alleging the unconstitutionality of the Act because, while the Governor's enforcement authority is general in scope, "there is . . . no single alternative defendant" who may be alternatively

14

sued. *Haslam*, 2017 WL 5187117, at *9 ("Where enforcement and administration responsibilities are diffused among different agencies and levels of state and local government, it is appropriate, under *Allied Artists*, to sue the governor, who bears the ultimate constitutional responsibility to 'take care that the laws be faithfully executed.'" (quoting Tenn. Const., art. III, § 10)); *see also Lee II*, 2021 WL 1907813, at *8 ("[M]uch of the actual enforcement of the Act is entrusted to the numerous, diffuse local law enforcement entities . . . with no single agency or official possessing the kind of singular authority that would render other defendants unnecessary. . . . [Therefore,] the Governor is an appropriate defendant in this case pursuant to *Allied Artists* . . . ."). This conclusion was reached even when the plaintiffs in those cases also sued the Director of the TBI. *See, e.g.*, *Newsome v. Lee*, No. 3:21-CV-41, 2021 WL 1697039, at *5 (M.D. Tenn. Apr. 29, 2021) (holding that the Governor and Director Rausch were *both* proper defendants in a similar case); *Haslam*, 2017 WL 5187117, at *9–10 (same). However, the opposite conclusion was reached in the Eastern District of Tennessee when the Sheriff's Office and Attorney General were also sued because they had singular enforcement authority over the plaintiff making the governor an unnecessary party, or when *Allied Artist* was not considered in the analysis. *See, e.g.*, *Kelly v. Lee*, 1:18-CV-00170-DCLC, 2020 WL 2120249, at *3 (E.D. Tenn. May 4, 2020) (dismissing the defendant governor where the plaintiff sued not only the governor and TBI director but also the attorney general and local sheriff); *Haslam*, 2017 WL 4782853, at *4 (not considering *Allied Artists*).

      Here, Plaintiff has not sued the Attorney General or the law enforcement department responsible for enforcement of the Act against him. As this case more closely resembles

15

the cases out of the Middle District of Tennessee finding that Defendant Lee is a proper defendant, this Court will find the same. Plaintiff has adequately pled that while Defendant Rausch is responsible for the TBI's enforcement of the Act, the Act is enforced by entities other than the TBI, making Defendant Lee a proper defendant under his general enforcement authority as there is no other person or entity who is a defendant in this action wholly responsible for enforcing the Act. [Doc. 1, ¶¶ 23-28]; *See also Lee II*, 2021 WL 1907813, at *7–8; *Haslam*, 2017 WL 5187117, at *9–10.

Accordingly, Defendants' motion to dismiss Defendant Lee from this action will be **DENIED**.

### III. Conclusion

Accordingly, for the reasons above, Defendants' motion to dismiss complaint [Doc. 13] will be **GRANTED** as to Counts II, III, & VI and those claims will be **DISMISSED**; and **DENIED** as to Counts I, IV, V, VII, & VIII. Defendants' motion to dismiss all claims against Defendant Lee [Doc. 13] will be **DENIED**. An order consistent with this opinion will be entered.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge